IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 7, 2004

## ERIC PHILLIPS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-25920    James C. Beasley, Jr., Judge**

————————————

**No. W2004-00150-CCA-R3-PC  - Filed February 7, 2005**

————————————

Petitioner, Eric Phillips, filed a petition for post-conviction relief, which was subsequently amended. Following an evidentiary hearing, the petition for post-conviction relief was dismissed. On appeal, Petitioner argues that he received ineffective assistance of counsel both at trial and on appeal. After a thorough review of the record, we find no error and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

John H. Parker, II, Memphis, Tennessee, for the appellant, Eric Phillips.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Following a jury trial, Petitioner was convicted of first degree premeditated murder and was sentenced to life imprisonment. The charged offenses involved a shooting in the early morning hours of April 7, 1998. The testimony of the State's primary witnesses was summarized by this Court in Petitioner's direct appeal in *State v. Phillips,* No. W1999-01800-CCA-R3-CD, 2001 WL 720656 (Tenn. Crim. App., at Jackson, June 26, 2001)*, perm. to appeal denied* (Tenn. Oct. 22, 2001) as follows:

> At trial, Officer Robert Earl Galison testified that in the early morning hours of April
> 7, 1998, he received a dispatch to the Oakview Apartment Complex to investigate a

reported shooting. As he arrived, he noticed a purplish Cadillac, which was still in gear and running, up against a dumpster. Officer Galison noticed bullet holes in the driver's side door of the car and that the victim was deceased. He notified the dispatcher and secured the crime scene. He was unable to locate any witnesses to the shooting.

The State's next witness was Veronica Ward, a resident of Oakview Apartments. She testified that she was awakened in the early morning hours of April 7, 1998 by several gunshots. She immediately got out of bed, went to her window, and opened the curtains. When she looked out of her window she saw the defendant, whom she later identified in a police photo lineup, running toward a gray Astro minivan. She recognized that the minivan was being driven by Derrick "Chicken" Cole. She testified that when she saw the defendant, he was wearing a white tank-top T-shirt, blue Air Jordan pants, and black and white Air Jordan shoes. She also testified that he was carrying what she described to be an AK47 assault rifle. She then saw the defendant dive into the minivan. Ms. Ward then got dressed and ran downstairs to the scene of the shooting. She looked in the car and saw the victim slumped over with his brains exposed through the back of his head.

Christene [sic] Phillips, who resided at Kennel Cabana Apartments, which are across the street from Oakview Apartments, was the next witness for the State. In the early morning of April 7, 1998, her live-in boyfriend, Derrick "Chicken" Cole, returned with her gray minivan and told her there had been a murder at the Oakview Apartments. She testified that six or seven other people arrived between 2:00 and 4:00 a.m., including "Mississippi," "Owen," "Little D.," "Bowdy," and the defendant, known to her as "E." While the entourage was there, she overheard the defendant state that he "got that boy" and explained that he did so because he wanted some parts from the victim's car. Ms. Phillips explained to the jury that the defendant owned a blue Cadillac similar to the one driven by the victim.

Officer Alvin Peppers next testified for the State. He collected six spent shell casings from the crime scene and metal fragments from the victim's car. He also made diagrams of the bullet holes in the car.

Virginia West, the victim's sister, testified that she was notified by telephone soon after the shooting and immediately went to the scene. When she arrived she identified her brother for the police. She also testified that she recalled seeing the defendant at the crime scene wearing a black hooded sweatshirt, not a white tank top.

The State's final witness was medical examiner, O.C. Smith. Dr. Smith testified that the victim died as a result of two gunshot wounds to his head. The victim also had a grazing gunshot wound to his left shoulder, a fragment wound to the back of his left upper arm, and an extensive gunshot wound entering his left thigh and exiting his

right thigh. Dr. Smith confirmed that the bullet fragments he recovered from the victim were consistent with the type that would be fired from an AK47 assault rifle. Also, the victim's wounds were consistent with the type of injury inflicted by the type of bullet fired from an AK47.

The defendant offered no proof and chose not to testify.

*Phillips*, 2001 WL 720656, at *1.

Petitioner argued the sufficiency of the convicting evidence on appeal. A panel of this Court upheld Petitioner's conviction, and the Supreme Court denied Petitioner's application for permission to appeal.

In general, Petitioner's claims of ineffective assistance of his trial counsel focus on counsel's preparation for trial and her cross-examination of the State's witnesses, particularly Ms. Ward and Ms. Phillips. Petitioner also claims that his appellate counsel was ineffective for failing to raise as an issue on appeal the admissibility of certain statements by Ms. Ward about Petitioner's gang affiliation.

## II. The Post-Conviction Hearing

Petitioner testified at the post-conviction hearing that his trial counsel failed to adequately investigate the scene of the crime. Petitioner said that Ms. Ward's view of the scene that night was impaired by a line of trees that grew between the sidewalk and her apartment. Petitioner said that his trial counsel photographed the location of a tree in relation to Ms. Ward's bedroom window but failed to introduce the photographs at trial.

Petitioner also testified that his trial counsel failed to sufficiently attack Ms. Phillips' credibility at trial. Petitioner said that Ms. Phillips had been interested in a sexual relationship with him before the offense, but Petitioner told her he was not interested in her. In addition, Petitioner maintained that Ms. Phillips was compelled to testify against him because the police threatened to take away her children if she did not cooperate. Petitioner denied that he attempted to get Ms. Phillips to change her testimony prior to the hearing on his motion for new trial. He conceded, however, that he released Ms. Phillips from her subpoena to testify at the hearing on the advice of his counsel when Ms. Phillips refused to alter her testimony.

Petitioner said that his trial counsel failed to interview a number of witnesses who could have either verified that he was not at the scene when the shooting occurred or testified that someone else killed the victim. These witnesses included Travis Jackson, LaShondra Cox, and a girl known as "Nika." Petitioner said that Mr. Jackson was with him on the night of the shooting, and that Ms. Cox and "Nika" could testify that Rico and Leon Proge admitted that they killed the victim during a car jacking. Petitioner conceded that his trial counsel had interviewed several people. He said that his

trial counsel asked if he wanted to request a continuance when his witnesses could not be located, but Petitioner decided not to do so because he had already been in jail for eighteen months.

Petitioner acknowledged that Mr. Jackson was subpoenaed to testify at the post-conviction hearing but had failed to show up. Petitioner, however, said that he did not want the post-conviction court to issue an attachment pro corpus because he was afraid Mr. Jackson would not be a friend any more if he did so, and Petitioner was not sure what Mr. Jackson would say under oath, if he was locked up pursuant to an attachment pro corpus.

Petitioner said that no one explained the elements of first degree premeditated murder to him or that he could receive a life sentence if he were found guilty. Petitioner believed his trial counsel should have challenged his arrest because the police did not have probable cause when Petitioner was first arrested.

Petitioner conceded on cross-examination that portions of Derrick Cole's testimony would not have been beneficial to his defense if Mr. Cole had been called to testify. Petitioner agreed that his trial counsel did pursue the inconsistencies in Ms. Ward's testimony, but insisted that she was ineffective when she did not get Ms. Ward to admit that she was lying. Petitioner acknowledged that he told his trial counsel on the day before the trial began that he had killed the victim. Petitioner said he thought his trial counsel would work harder if she knew he had committed the offense.

Garland Erguden, Petitioner's appellate counsel, testified that she did not raise on appeal the trial court's admission of Ms. Ward's testimony about gang activities because it was her understanding that the trial court gave a curative instruction to the jury. Ms. Erguden believed that the strongest issue on appeal was the sufficiency of the convicting evidence because of the many inconsistencies in Ms. Ward's testimony.

Christine Phillips testified that she told Petitioner's trial counsel that the police had told her she could be charged as an accessory if she did not cooperate. Ms. Phillips said that she was initially afraid to give a statement because Petitioner was a gang member. Ms. Phillips said, however, that her testimony would not have been any different if she had not been afraid. Ms. Phillips said that Petitioner tried to get her to change her testimony before the hearing on his motion for new trial to say that Petitioner did not admit that he killed the victim, but she refused to do so.

Melvin Jenkins lived in Ms. Phillips' apartment at the time of the offense. He testified that Petitioner did not admit that he had killed the victim after everyone had gathered in Ms. Phillips' apartment after the shooting. Mr. Jenkins said that he agreed to testify at the post-conviction proceeding in order to help Petitioner out. Mr. Jenkins denied knowing anything about Petitioner's trial although he acknowledged that he knew Petitioner was in jail after his arrest for the offense. Mr. Jenkins said that he believed a man named "Mississippi" had killed the victim, but "Mississippi" disappeared after the incident. Mr. Jenkins admitted on cross-examination that he was incarcerated in Shelby County when Petitioner's post-conviction counsel contacted him.

Latonya Burrow, Petitioner's trial counsel, testified that Petitioner was cooperative during the pre-trial investigation. Ms. Burrow thought that Petitioner was intelligent and fully capable of understanding the charges against him. Ms. Burrow met with Petitioner at least ten times during the months preceding his trial.

Ms. Burrow said that she visited the crime scene and went inside Ms. Ward's apartment. She said that there was only one tree outside of Ms. Ward's bedroom window, and that the tree did not obstruct the view of the parking lot where Ms. Ward said that she saw Petitioner.

Ms. Burrow said that Petitioner admitted to her that he committed the offense about two weeks before his trial began. Although the defense had been originally based on a theory of misidentification, Ms. Burrow said that she focused her cross-examination on the inconsistencies in the testimony of the State's witnesses after Petitioner's admission. She believed that she covered all of the inconsistencies in Ms. Ward's testimony during her cross-examination.

Ms. Burrow said that she knew Ms. Phillips had some kind of relationship with Petitioner prior to the incident, but Ms. Phillips said she and Petitioner had parted on friendly terms. Ms. Burrow said that she did not want to question Ms. Phillips about her relationship with Petitioner because that line of questioning might bolster her credibility. Ms. Burrow admitted that she and her investigator, Eugene Cole, had trouble finding the people on Petitioner's witness list. The potential witnesses for the most part were known only by nicknames. Ms. Burrow acknowledged that she could not find Mr. Jenkins before the trial began. Ms. Burrow interviewed Derrick Cole and concluded that his testimony would not be beneficial to Petitioner's defense. Mr. Cole initially told the police after the shooting that Petitioner told him to move the victim's car away from the apartments, and Ms. Burrow believed that this statement would outweigh any benefit that might have been derived from Mr. Cole's testimony.

Ms. Burrow was aware that the police had told Ms. Phillips that they might arrest her if she did not cooperate. Regardless of Ms. Phillips' motivation behind her cooperation with the police, Ms. Burrow said that Ms. Phillips' testimony was consistent throughout the trial process.

Ms. Burrow said that she filed numerous pre-trial motions but did not consider filing a motion to suppress. Ms. Burrow said that she believed the police had probable cause to arrest Petitioner based on the identification of Petitioner as the shooter by various witnesses.

On cross-examination, Ms. Burrow agreed that she was aware that Ms. Ward's medical records indicated that she had a more serious eye condition than Ms. Ward described at trial. Ms. Burrow also agreed that she did not question Ms. Ward about the fact that she disliked Petitioner or that she was known in the neighborhood as "the police." Ms. Burrow also said that she was aware of a potential witness whom she believed was known as "Mika," rather than "Nika," and that "Mika" and LaShondra Cox had told other people that the Proge brothers killed the victim. She subpoenaed "Mika," but the woman did not appear in court. Ms. Burrow said that she also talked to Ms. Cox.

-5-

When Ms. Cox told Ms. Burrow that she would not lie to help Petitioner, Ms. Burrow decided not to call her as a witness.

Ms. Burrow conceded that she viewed the crime scene under the assumption that Ms. Ward saw Petitioner running from the parking lot through the space that separated Ms. Ward's apartment from the next building. At trial, Ms. Ward, however, said that she saw Petitioner running away from the victim's car without mentioning the alley between the apartment buildings. Nonetheless, Ms. Burrow said that she did not believe that the direction Petitioner fled after the shooting would impact her assessment of Ms. Ward's view of the parking lot.

At the conclusion of the hearing, the trial court found that Ms. Burrow had thoroughly prepared Petitioner's defense, and that she did everything she could to locate the potential witnesses. The trial court found that Ms. Burrow ably cross-examined Ms. Ward and effectively highlighted the inconsistencies in her testimony. The trial court concluded that even if it had been error not to ask Ms. Ward about her feelings toward Petitioner, this omission would not have affected the outcome of the trial. The trial court specifically accredited the testimony of Ms. Phillips and Ms. Burrow and discredited the testimony of Mr. Jenkins. The trial court also found that Petitioner was fully capable of understanding the elements of the charged offenses and the potential punishment. Based on the foregoing, the trial court dismissed Petitioner's petition for post-conviction relief.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Therefore, this Court may not re-weigh or re-evaluate these findings or substitute its inferences for that of the trial judge unless the evidence in the record preponderates against those findings. *State v. Honeycutt*, 54 S.W.3d 762, 763 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). In addition, questions concerning the credibility of witnesses and the weight and value given their testimony is resolved by the post-conviction court, and not this Court. *Id.* However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a

particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Effectiveness of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for failing to raise as an issue on appeal the admissibility of Ms. Ward's comments about gang-related activities in the neighborhood. It is not entirely clear from the record whether or not trial counsel objected to the statements, but Ms. Erguden believed that an objection was made. Ms. Erguden also conceded that the transcript of the hearing on Petitioner's motion for new trial indicated only that the trial court "believed" it had instructed the jury to disregard Ms. Ward's comments. Ms. Erguden did not review a copy of any of the trial court's instructions to the jury.

Nonetheless, Ms. Erguden testified that although she considered raising this issue on appeal, she concluded that Petitioner's strongest argument rested upon a challenge to the sufficiency of the convicting evidence because of the many inconsistencies in Ms. Ward's testimony. Ms. Erguden said that none of the gang-related activities Ms. Ward described in her testimony were attributed to Petitioner, and the activities occurred some time after the crime. In addition, Ms. Erguden said that it was Ms. Phillips' testimony, not Ms. Ward's, that was the most damaging to Petitioner's defense. The post-conviction court found that even if Ms. Erguden should have raised the admissibility of Ms. Ward's statements on appeal, Petitioner had failed to show that he was prejudiced by this omission.

There is no constitutional requirement that appellate counsel argue every conceivable issue on appeal. *Carpenter v.* State, 126 S.W.3d 879, 887 (Tenn. 2004); *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995). The determination of which issue to raise on appeal is a tactical or strategic choice, and "is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel." *Id.* (citations omitted); *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993). Some factors which are helpful in evaluating the effectiveness of appellate counsel include whether the omitted issue was "significant and obvious," whether the omitted issue was clearly stronger than the issue presented, and whether "the decision to omit the issue an unreasonable one which only an incompetent attorney would adopt." *Carpenter*, 126 S.W.3d at 888.

Based upon our review, we find that the evidence in the record does not preponderate against the trial court's finding that Petitioner failed to show that he was prejudiced as a result of his appellate counsel's failure to raise on appeal the admissibility of Ms. Ward's comments about gang-related activities in the neighborhood. Petitioner is not entitled to relief on this issue.

## V. Effectiveness of Trial Counsel

Petitioner concedes that Ms. Burrow cross-examined Ms. Ward about her prior inconsistent statements, her inability to accurately place the shooting within a specific time frame, and her poor eyesight. Petitioner argues, however, that Ms. Burrow's assistance was ineffective because she made certain assumptions about the direction Petitioner fled after the incident that were not reflected in Ms. Ward's testimony. Petitioner argues that if Ms. Ward saw Petitioner running down the street instead of through the alley between the apartment buildings as Ms. Burrow assumed, then the tree in front of Ms. Ward's bedroom window would have blocked her view of Petitioner. Ms. Burrow testified that she examined the parking lot where the shooting took place, and viewed the scene from Ms. Ward's bedroom window. Ms. Burrow determined that Ms. Ward's view of the parking lot where Ms. Phillips' minivan was parked was not obstructed by the tree. Ms. Burrow said that she decided not to question Ms. Ward about the tree outside her window because that line of questioning might bolster Ms. Ward's testimony.

The trial court found that Ms. Burrow effectively attacked Ms. Ward's credibility from a number of directions, and that her decision not to pursue questions about the tree in front of Ms. Ward's bedroom window was a tactical decision based upon her own personal observations. The evidence does not preponderate against the trial court's finding that Petitioner's trial counsel rendered effective assistance of counsel during Ms. Ward's cross-examination. Petitioner is not entitled to relief on this issue.

Petitioner argues that Ms. Burrow was ineffective when she failed to cross-examine Ms. Phillips about the police officers' threats that she would be charged as an accessory if she did not cooperate. Ms. Phillips testified at the post-conviction hearing that she was afraid to give a statement to the police because of Petitioner's gang affiliation. The trial court found that Ms. Burrow's tactical decision not to probe into Ms. Phillips' reluctance to come forward was within the range of competence expected of defense counsel. The evidence does not preponderate against the trial court's finding that Ms. Burrow provided effective assistance of counsel during Ms. Phillips' cross-examination. Petitioner is not entitled to relief on this issue.

Petitioner argues that Ms. Burrow's investigations were ineffective because she failed to locate several witnesses whose testimony would have been beneficial to Petitioner. When a petitioner contends that trial counsel failed to discover, interview, or present a witness in support of the defense, he should present that witness at the evidentiary hearing on the post-conviction claim. *Black*, 794 S.W.2d at 757. Petitioner told his post-conviction counsel not to request the post-conviction court to issue an attachment pro corpus when Travis Jackson did not respond to his subpoena to testify at the post-conviction hearing. Petitioner did call Mr. Jenkins as a witness at his

post-conviction hearing, but the trial court specifically discredited Mr. Jenkins' testimony that Petitioner did not admit that he shot the victim. The trial court accredited Ms. Burrow's testimony that she made every effort possible to locate the people on Petitioner's list of witnesses. The trial court observed that Petitioner refused to allow Ms. Burrow to take the legal steps necessary to bring Mr. Jackson into court to testify, and released other witnesses after they were subpoenaed. The trial court stated, "I don't think we can lay at the feet of Ms. Burrow ineffective representation, when she's being hampered not only by the rules of the street but by her client's wanting to play by the rules of the street instead of doing what's in his best interest at the advice of his lawyer." The evidence does not preponderate against the trial court's finding that Ms. Burrow provided effective assistance of counsel during the investigation of Petitioner's case. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we find that the evidence does not preponderate against the trial court's finding that Petitioner's appellate and trial counsel rendered effective assistance of counsel, and that Petitioner failed to show that he was prejudiced by any deficiencies that might be attributed to his counsel's representation. We affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE